# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re**

RODNEY STEINER and
ROLYNDIA STEINER,

**Debtors.**

**Bankruptcy Case
No. 10-40755-JDP**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    Robert J. Maynes, Idaho Falls, Idaho, Attorney for Debtors.

    R. Sam Hopkins, Pocatello, Idaho, Chapter 7 Trustee.

## Introduction

Chapter 7 [1] debtors Rodney and Rolyndia  Steiner ("Debtors")[2] both

---

[1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2]  The Court's occasional reference to Debtors by their first names is done
solely for clarity of the record; no disrespect is intended.

MEMORANDUM OF DECISION - 1

claim exemptions in the cash surrender value of various life insurance

policies.  Rodney is listed as the "owner" of all of the policies in the

insurance providers' records.  Trustee R. Sam Hopkins ("Trustee")

objected to Rolyndia's claimed exemptions, Docket Nos. 17 and 24, relying

on language in Idaho's exemption statutes indicating that a debtor may

exempt an interest in those unmatured life insurance contracts "owned by

the individual."  *See* Idaho Code § 11-605(10).   Debtors responded to the

objection, Docket Nos. 18 and 27, insisting that both Debtors are entitled to

claim the policies exempt.  The Court conducted a hearing on Trustee's

objection on October 26, 2010, and took the issues under advisement.  The

Court has considered the record and submissions, the arguments of the

parties, as well as the applicable law.  This Memorandum constitutes the

Court's findings of fact and conclusions of law, and resolves this contest.

Fed. R. Bankr. P. 7052, 9014.

MEMORANDUM OF DECISION - 2

## Facts[3]

Debtors filed a chapter 7 bankruptcy petition on April 30, 2010.

Relevant here, among Debtors' scheduled personal property and claimed

exemptions are several life insurance policies. Debtors' Amended

Schedules B and C, Docket No. 22.

One of those policies, an AXA Equitable Life Insurance Company

whole life policy ("AXA Policy -675"), was purchased for Rodney by his

parents in 1968. Debtors married in 1995, and for the fifteen years between

their marriage and filing for bankruptcy, Debtors made the premium

payments on AXA Policy -675 with their community property earnings.[4]

In 2002 and 2004, Debtors purchased five additional life insurance

---

[3] Unless otherwise noted, the facts reflect those indicated in Debtors'
Response to Trustee's Amended Objection to Claim of Exemption, Docket No.
27, which both parties agree reflect the facts of the case. Hearing on Trustee's
Objection (Oct. 26, 2010).

[4] That the post-marriage premium payments were community property
is, obviously, a legal conclusion. However, neither Debtors nor Trustee disputed
that the post-marriage payments were community property, as defined by Idaho
law, and the Court, without more information regarding the nature of the
payments, accepts their conclusion.

MEMORANDUM OF DECISION - 3

policies from Northwest Mutual (NW Policy -"X").  Only three of those

policies are implicated here.  The details of the  contested policies, as of the

petition date, are:

| Policy | Exemption Law Claimed | Exemption Amount Claimed | Net Cash Surrender Value | Owner Indicated on Policy | Insured Individual |
|---|---|---|---|---|---|
| AXA Policy -675 | Idaho Code § 11-605(10) | $7,264.78 | $7,264.78 | Rodney Steiner | Rodney Steiner |
| NW Policy -275 | Idaho Code § 11-605(10) | $1,130.77 | $1,130.77 | Rodney Steiner | Minor Child |
| NW Policy -238 | Idaho Code § 11-605(10) | $473.68 | $953.89 | Rodney Steiner | Minor Child |
| NW Policy -254 | Idaho Code § 11-605(10) | $1,130.77 | $1,130.77 | Rodney Steiner | Minor Child |

Debtors' Amended Schedule C, Docket No. 22; Exs. 200, 201.

## Discussion

Upon filing a bankruptcy petition, a bankruptcy estate is created,

which includes all of a debtor's then-existing legal or equitable interests in

property.  *See* 11 U.S.C. § 541(a).  At the same time, debtors may exempt

the value of certain property, and thereby shield it from administration by

the trustee for creditors of that estate.  § 522(b).  Potential exemptions are

MEMORANDUM OF DECISION - 4

determined by either the Bankruptcy Code, or, if a state has "opted out" of

the Code's exemption scheme, by state law.  § 522(b)(2).  Idaho has opted

out of the federal system, and as a result, limits the exemptions available to

its residents to those authorized by Idaho statute.  Idaho Code § 11-609.

When interpreting an Idaho exemption, the statute is to be

construed liberally in favor of the debtor.  *In re Merrill*, 431 B.R. 239, 242

(Bankr. D. Idaho 2009); *In re Duman*, 00.3 I.B.C.R. 137, 137 (Bankr. D. Idaho

2000).  The party objecting to a claimed exemption bears the burden of

proving that the claim is not proper.  Rule 4003(c); *Carter v. Anderson* (*In re

Carter*), 182 F.3d 1027, 1029 n.3 (9th Cir. 1999); *Hopkins v. Cerchione* (*In re

Cerchione*), 414 B.R. 540, 548–49 (9th Cir. BAP 2009).

Debtors, per the language of Idaho Code § 11-605(10), have both

claimed an exemption in the cash surrender value[5] of each of four life

---

[5]  The interests at issue have been termed:  "cash surrender value," "cash
value," and "loan value."  *Compare* Ex. 200 (interest in AXA Policy -675 called
"cash surrender value"), *with* Trustee's Amended Objection at 3, Docket No. 24
(referring to "cash value"), *and* Debtors' Response to Trustee's Amended
Objection at 5, Docket No. 27 (interest in AXA Policy -675 described as "loan
(continued...)

MEMORANDUM OF DECISION - 5

insurance policies.  Debtors' Amended Schedule C, Docket No. 22.  The

exemption statute provides:

> An individual's aggregate interest, not to exceed
> five thousand dollars ($5,000) in any accrued
> dividend or interest under, or loan value of, any
> unmatured life insurance contract owned by the
> individual under which the insured is the
> individual or a person of whom the individual is
> a dependent.

Idaho Code § 11-605(10).  Rodney and Rolyndia have each claimed $5,000

exemptions in the policies' cash surrender value, for a total of $10,000.

In general, in a case with joint debtors, each individual debtor may

claim applicable exemptions, aggregating their claims for an accumulated

exemption amount.  11 U.S.C. § 522(m); *see In re Hoffpauir*, 258 B.R. 447,

---

[5](...continued)
value").  The policy providers, however, denominate or treat the claimed
amounts as cash surrender value.  *See* Ex. 200 (interest in AXA Policy -675 called
"cash surrender value"); Ex. 201 (footnote to table containing the Northwest
Mutual policies: "Cash values displayed may not reflect actual premium
payment status.  Actual values will be determined at the time of surrender.").
The Court finds that, despite the parties' varied terminology, the Debtors'
interests are cash surrender values for purposes of the exemption statutes, and
the Court will refer to, and analyze, them as such.

MEMORANDUM OF DECISION - 6

457–58 (Bankr. D. Idaho 2001) (allowing joint debtors to aggregate

personal property exemptions under Idaho's exemption statutes); *In re*

*Aguero*, 93 I.B.C.R. 65, 67 (Bankr. D. Idaho 1993) (allowing aggregation of

motor vehicle exemptions under Idaho's exemption statutes).  Despite

§ 522(m), however, states that opt out of the federal exemption scheme, at

least in the Ninth Circuit, may, by statute, limit joint debtors to a single

claim of exemption.  *See Granger v. Watson* (*In re Granger*), 754 F.2d 1490,

1491–92 (9th Cir. 1985).  Here, Trustee argues that aggregation of Rodney

and Rolyndia's claims should not be allowed, and that by limiting

exemptions in interests under unmatured life insurance policies to those

related to contracts "owned by [an] individual," the Idaho Legislature

intended to allow only the owner of a policy, as indicated on insurance

providers' records, to claim its value exempt.  *See* Trustee's Amended

Objection at 2–3, Docket No. 24.  Trustee asserts that Rolyndia, who is not

an owner of record of any of the pertinent life insurance policies,  may not

MEMORANDUM OF DECISION - 7

claim an exemption in the cash surrender value of those policies. *Id.*[6]

Debtors dispute Trustee's position.

  A. <u>Cash Surrender Value is Subject to Idaho Code § 11-605(10).</u>

  As an initial matter, a determination must be made as to whether
cash surrender value may be exempted under Idaho Code § 11-605(10), or
whether such interests are encompassed in an exemption of the policy
itself under Idaho Code § 11-605(9).[7]

  This Court, in a footnote in a 2002 decision by now-Chief Judge
Myers analyzing Idaho Code  § 11-605(9) and (10),[8] indicated, in

---

  [6] As discussed below, Trustee does not object to Rodney's $5,000
exemption claim in the value of one of the policies.

  [7] Idaho Code § 11-605(9) exempts:

   Any unmatured life insurance contract owned by an individual,
   other than a credit life insurance contract.

  [8] At the time of the *In re Oxford* decision, Idaho Code § 11-605(10) was
enumerated § 11-605(9), and Idaho Code § 11-605(9) was enumerated § 11-605(8).
For clarity, the Court refers only to the current statutory numbering scheme.

MEMORANDUM OF DECISION - 8

dicta,[9] that exemption of an unmatured life insurance policy under Idaho

Code § 11-605(9) also encompassed the policy's cash surrender value.  *In re*

*Oxford*, 274 B.R. 887, 890–91 n.6 (Bankr. D. Idaho 2002).  The reasoning

offered by the Court for that determination was that, because a life

insurance policy must be surrendered to the policy's issuer in order to

recover the cash surrender value from the issuer, and because a trustee

cannot force the surrender of a policy that has been exempted, cash

surrender value is necessarily protected by exempting the policy beyond

the trustee's reach.  *See id.*  Upon further consideration, however, it

appears that Idaho Code § 11-605(9) and (10) were intended by the

Legislature to protect two different types of interests in unmatured life

insurance contracts, that cash surrender value falls within the type of

---

[9]  As here, the parties in *In re Oxford* characterized the disputed interests as both "cash surrender values" and "loan values."  274 B.R. at 888.  Because of the loan value characterization, the Court analyzed Idaho Code § 11-605(10)'s application to loan values, dismissing the issues raised by analysis of cash surrender value by finding, in a footnote, that Idaho Code § 11-605(9), not Idaho Code § 11-605(10), encompasses an exemption of cash surrender value.  *Id.* at 890–93 & n.6.

MEMORANDUM OF DECISION - 9

interest exempted by Idaho Code § 11-605(10), and that redemption of a

policy, and payment to the trustee of funds actually held by a policy's

issuer, are not necessarily required in turning over a policy's cash

surrender *value*.

Other than *In re Oxford*, neither this Court, nor Idaho's state courts

have discussed Idaho Code § 11-605(9) or (10) in reported decisions. In

addition, there is no legislative history explaining the Legislature's intent

in adopting the two statutes. *See In re Oxford*, 274 B.R. at 889 (indicating

that there is no legislative history for the statutes, and citing 1999 Sess.

Laws, ch. 307, § 1, p. 764). In the absence of guiding state legislative

history or case law, the Court may look to corollary federal exemption

statutes, and interpretations of those statutes, to determine the meaning of

state exemption statutes. *See id.* at 890.

There are two federal exemption corollaries to those in Idaho Code

§ 11-605(9) and (10). *See* 11 U.S.C. § 522(d)(7) and (8). The language of

Idaho Code § 11-605(9) tracks the language of 11 U.S.C. § 522(d)(7) exactly,

MEMORANDUM OF DECISION - 10

with the single exception that the state statute substitutes the word

"individual" for "debtor."  The language of Idaho Code § 11-605(10) also

substitutes "individual" for "debtor," alters the exemption amount from

that in § 522(d)(8), and omits language reducing the exemption amount for

premiums made automatically under a pre-petition contract per § 524(d).

Other than those minor changes, Idaho Code § 11-605(10) is a verbatim

reproduction of 11 U.S.C. § 522(d)(8).

The exemption in § 522(d)(7) has been interpreted to apply to

unmatured life insurance policies.  *See Cyrak v. Poynor*, 80 B.R. 75, 81 (N.D.

Tex. 1987).  The legislative history for § 522(d)(7) supports that

interpretation:

> Paragraph (7) exempts a life insurance contract,
> other than a credit life insurance contract, owned
> by the debtor.  This paragraph refers to the life
> insurance contract itself.  It does not encompass
> any other rights under the contract, such as the
> right to borrow out the loan value.

H.R. REP. NO. 95-595, at 361 (1977).  Of course, there may be an inherent

MEMORANDUM OF DECISION - 11

benefit for a debtor to maintain an existing  life insurance contract without

disruption.  *Cyrak*, 80 B.R. at 80 (quoting Vukowich, *Debtors' Exemption*

*Rights Under the Bankruptcy Reform Act*, 58 N.C. L. REV. 769, 786 (1980)).

Particularly for those debtors whose health has deteriorated, or who have

aged significantly since entering into a life insurance contract, the debtor

may no longer be able to obtain or afford life insurance.  *Id.*  At the same

time, the impact of such an exemption on creditors is fairly minimal

because a policy typically has little value until it matures.  *See id.* at 81.

      The rationale for § 522(d)(7) was carried over from the Bankruptcy

Act.  *See id.* at 80 (quoting Vukowich, *Debtors' Exemption Rights Under the*

*Bankruptcy Reform Act*, 58 N.C. L. REV. at 786); *Brown v. Swartz* (*In re*

*Swartz*), 18 B.R. 454, 456 (Bankr. D. Mass. 1982) (citing *In re Fount-Wip*

*Distribs. of South Jersey, Inc.*, 4 B.R. 424, 427 (Bankr. D.N.J. 1980)).  In order

to exempt a policy under the Act, however, a debtor had to first pay the

cash surrender value of the policy to the trustee.  *In re Swartz*, 18 B.R. at

MEMORANDUM OF DECISION - 12

456.  Such a scheme, which allowed a debtor to retain his life insurance

policy, necessarily only required the payment of cash surrender "value,"

and not the actual cash received in exchange for a surrender of the policy.

If surrender were required, there would be no policy for the debtor to

retain.

With the introduction of the Code, and adoption of § 522(d)(8),

Congress indicated that it intended to allow debtors to continue to exempt

life insurance policies, and, in addition, created a new exemption in the

cash surrender value that had traditionally been turned over to a trustee as

a condition of policy retention.  *In re Swartz*, 18 B.R. at 456.  While

§ 522(d)(7) "does not encompass *any other rights* under the contract,"

§ 522(d)(8) allows for exemption of dividends or interests accrued under a

contract.  *See* H.R. REP. NO. 95-595, at 361 (emphasis added); § 522(d)(8).  It

is through § 522(d)(8) that Congress has allowed for exemption of

dividends and interests such as cash surrender value.  *In re Swartz*, 18 B.R.

MEMORANDUM OF DECISION - 13

at 456.

In other words, all that is exempted by § 522(d)(7), and its state-law counterpart Idaho Code § 11-605(9), is the life insurance policy itself, and not a debtor's rights under the policy. H.R. REP. NO. 95-595, at 361. If a debtor wishes to protect dividends or interests that have accrued under a policy, such as a policy's cash surrender value, he or she must claim exemption in that interest under § 522(d)(8) or Idaho Code § 11-605(10). Despite the footnote in Judge Myer's decision in 2002 indicating that a policy's cash surrender value is encompassed within an exemption of the policy, this Court concludes that the right to cash surrender value does not rely upon the mechanics of policy surrender. Therefore, Debtors' cash surrender value, or at least that portion that is not exempted under Idaho Code § 11-605(10), is available to Trustee for distribution to Debtors' creditors.

     B.     Life Insurance Policies Insuring Minor Children.

MEMORANDUM OF DECISION - 14

Before analyzing the disputed "owned" term of Idaho Code § 11-605(10), the Court notes that other language in the statute precludes Debtors' claims of exemption in the cash surrender value of the policies insuring Debtors' minor children.  An Idaho Code § 11-605(10) exemption is limited to an "accrued dividend or interest under . . any unmatured life insurance contract owned by the individual *under which the insured is the individual or a person of whom the individual is a dependent*."  (emphasis added).  In other words, a debtor may claim an exemption in an interest under an unmatured life insurance contract only if he or she is the insured, or is a dependent of the insured.  *See Norman v. Norman* (*In re Norman*), 32 B.R. 562, 567 (Bankr. W.D. Mo. 1983) (analyzing corollary § 522(d)(8) and finding that debtor could not claim exemption where insured was debtor's brother).  A "dependent," as that term is used in Idaho's exemption statutes, is "an individual who derives support primarily from another individual."  Idaho Code § 11-601(2).

MEMORANDUM OF DECISION - 15

In three of the four life insurance policies claimed exempt by Debtors, the persons insured are Debtors' minor children. *See* Ex. 201. Put another way, Debtors are not insured by those policies. There is nothing in the record to suggest that Debtors derive their support primarily from their minor children. Therefore, per the language of Idaho Code § 11-605(10), neither of the Debtors may claim an exemption in the policies identified as: NW Policy -275; NW Policy -238; and NW Policy -254. The only unmatured life insurance policy in which Debtors may possibly claim the cash surrender value as exempt is AXA Policy -675.

    C.    <u>AXA Policy -675</u>.

As of April 2010, AXA Policy -675 had a cash surrender value of $7,264.78. Ex. 200. Trustee concedes that Rodney, as the listed owner of that policy, may exempt up to $5,000 in the policy's cash surrender value. Trustee's Amended Objection at 2–3, Docket No. 24. The question, then, is whether Rolyndia, who is not a listed owner, may also claim an Idaho

MEMORANDUM OF DECISION - 16

Code § 11-605(10) exemption in up to $5,000 in the policy's cash surrender

value.

1.    <u>Policy ownership is determined by state law</u>.

When construing an Idaho statute, courts look at the literal words of

the statute, considering all portions of the statute together.  *In re Hoffpauir*,

258 B.R. at 456 (citing *Rule Sales and Service, Inc. v. U.S. Bank Nat. Ass'n*, 991

P.2d 857, 860–61 (Idaho Ct. App. 1999).  If the statute's meaning is plain,

clear, and unambiguous, courts must interpret the statute consistently

with that plain meaning.  *See id.*  Where a statute is ambiguous, however,

courts may look to the structure of the law as a whole, and to its object and

policy.  *Bonner Mall P'ship v. U.S. Bancorp Mortg. Co.* (*In re Bonner Mall

P'ship*), 2 F.3d 899, 915 (9th Cir. 1993).  If a statutory term has an ordinary,

non-technical and non-scientific meaning, which is understood in common

everyday use, the court should ascribe the ordinary and commonly

understood meaning to the term.  *In re Duman*, 00.3 I.B.C.R. 137, 137

MEMORANDUM OF DECISION - 17

(Bankr. D. Idaho 2000) (quoting *Howard v. Grimes Pass Placer Mining Co.*,

120 P. 170, 170 (Idaho 1911).

Idaho Code § 11-605(10) indicates that, to exempt an interest in an

unmatured life insurance policy, the policy must be "owned" by the

individual claiming the exemption.  Debtors and Trustee propose different

interpretations of the term "owned."  Trustee argues the term refers to the

person indicated to be the owner on the insurance provider's records.

Trustee's Amended Objection at 2–3, Docket No. 24.  Debtors, however,

argue that ownership, for the purposes of § 11-605(10), includes ownership

derived through the application of Idaho's community property law.

Debtors' Response to Trustee's Amended Objection at 5, Docket No. 27.

Because the meaning of the word "owned" is not plain, clear, or

unambiguous, the Court must determine whether the term, in this context,

has a technical meaning (i.e., limiting ownership to persons recorded as

owners), or whether a common, everyday use of the term should be

MEMORANDUM OF DECISION - 18

assumed.

There is no legislative history or case law discussing the meaning of
"owned" in this context.  *See In re Oxford*, 274 B.R. at 889.  The legislative
history for the corollary federal exemption statute, 11 U.S.C. § 522(d)(8),
also sheds no light on the term's meaning.  *See* H.R. REP. NO. 95-595, at
361–62 (1977).  Various courts, however, have commented on life insurance
policy ownership in reviewing Idaho Code § 11-605(9) and (10)'s corollary
federal exemption statutes:  § 522(d)(7) and (8).

The Ninth Circuit has indicated that a debtor's ownership interest in
a policy is the "right to maintain the policy and name a beneficiary."
*Fireman's Fund Ins. Co. v. Woodson* (*In re Woodson*), 839 F.2d 610, 618 (9th
Cir. 1988).  Such a view does not incorporate a technical or specialized
meaning into the concept of policy ownership.

A similarly non-technical view is reflected in a decision by the
bankruptcy court in the Northern District of Texas.  *See In re Tillerson*, 49

MEMORANDUM OF DECISION - 19

B.R. 11, 12–13 (Bankr. N.D. Tex. 1984). There, in a community property

state, the court assumed that a policy was "owned by the community and

thus the wife enjoy[ed] ownership status." *Id.* At the same time, the court

noted that, if the policy did not qualify as community property under

Texas law (i.e., it "was purchased by the husband before marriage"), the

husband would be the owner and "arguably the wife would not qualify to

claim an exemption under § 522(d)(8)[,] which requires the policy to be

'owned by the debtor.'" *Id.* at 13 n.2. Essentially, the Texas bankruptcy

court's view of "owned" relied not on a technical meaning, but on the

common everyday meaning of ownership under Texas law.

    This Court, likewise, finds no reason to apply a technical meaning to

the term in Idaho Code § 11-605(10), and instead looks to Idaho law to

determine Rolyndia's ownership interest in AXA Policy -675. *See In re*

*Martell*, 349 B.R. 233, 235–36 (Bankr. D. Idaho 2005) ("To determine the

nature and extent of a debtor's interest in specific property . . . the Court

MEMORANDUM OF DECISION - 20

looks to state law.").

    2.    <u>Under Idaho law, Rolyndia does not own AXA Policy -675</u>.

Idaho recognizes the concept of community property.  *See* Idaho

Code §§ 32-901 to 32-929.  The characterization of property as community

or separate property depends upon a property's date of acquisition and

whether it was acquired with community or separate funds.  *Banner Life*

*Ins. Co. v. Mark Wallace Dixson Irrevocable Trust*, 206 P.3d 481, 488 (Idaho

2009).  In general, all property acquired by a couple after marriage, with

community property, is presumed to be community property.  *In re Martell*,

349 B.R. at 236.  Where property is acquired prior to marriage, or with

separate property, however, that property is characterized as separate

property.  Idaho Code § 32-903; *Hoskinson v. Hoskinson*, 80 P.3d 1049,

1059–60 (Idaho 2003).  This general scheme applies to whole life insurance

policies, such as that at issue here.  *Cf. Banner Life Ins. Co.*, 206 P.3d at

488–89 (explaining that term life insurance policies, which only protect

MEMORANDUM OF DECISION - 21

against the risk of the insured's death for a fixed period, are different from whole life insurance policies, and are classified based on the character of the funds used to make the last premium payment).

AXA Policy -675 was purchased for Rodney by his parents in 1968, twenty-seven years before the community with Rolyndia was created by their marriage in 1995. Because the policy's acquisition date was prior to Debtors' marriage, AXA Policy -675 is Rodney's separate property.

Debtors assert that, because AXA Policy-675 premiums have been paid with community property since the Debtors' marriage, "any increase in [cash surrender] value related to such payments constitute community property." Debtors' Response to Trustee's Amended Objection at 5, Docket No. 27. The party asserting that community expenditures have enhanced the value of separate property has the burden of showing both enhancement and the amount of enhancement. *See Hoskinson*, 80 P.3d at 1062. Where separate property value is enhanced by a community

MEMORANDUM OF DECISION - 22

property expenditure, the increase in value is community property.  *Bliss v. Bliss*, 898 P.2d 1081, 1083 (Idaho 1995).  Characterization of an increase in value as community property, however, does not entitle the community-only owner to exercise management and control over the underlying separate property asset; it merely entitles the community-only owner to a reimbursement for the increase in separate property value attributable to community expenditures.  *See id.* at 1083–84.

Debtors have not provided the Court with any information demonstrating that AXA Policy -675's cash surrender value increased after their marriage.  Additionally, Debtors have not submitted any evidence tying community expenditures to the policy's value.  Even if such information were provided to the Court, however, Rolyndia would not have a community property interest in Rodney's AXA Policy-675.  Instead, under the case law, Rolyndia and the community might have a reimbursement claim in the policy's increased cash surrender value.  But,

MEMORANDUM OF DECISION - 23

of significance for purposes of the exemption statute, it can not be said that

Rolyndia holds an ownership interest in Rodney's policy.

Not only is Rolyndia not an owner of the AXA Policy-675 on AXA's

company records, but she has not shown that she is an owner of the policy

pursuant to Idaho community property law.  Because AXA Policy -675 is

not "owned" by Rolyndia, she may not claim an Idaho Code § 11-605(10)

exemption in the cash surrender value associated with that policy.  Debtors

are limited to Rodney's $5,000 exemption in the policy's cash surrender

value.

### Conclusion

Exemptions under Idaho Code § 11-605(10) may only be taken by

those that own an unmatured life insurance policy, and, even then, only if

the person claiming the exemption is the insured or a dependent of the

insured.  Debtors' Northwestern Mutual life insurance policies all insure

Debtors' various minor children, and Debtors may not claim an Idaho

MEMORANDUM OF DECISION - 24

Code § 11-605(10) exemption in those policies.  In addition, Rolyndia is not an owner of AXA Policy -675.  Therefore, while Rodney, the policy's owner, may claim $5,000 in the cash surrender value of that policy as exempt, Rolyndia may not do so.

Trustee's objection to Debtors' claim of exemption will be SUSTAINED in a separate order.

Dated:  November 10, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 25